Execution Copy

**CONFIDENTIAL: COMMUNICATION FOR SETTLEMENT PURPOSES ONLY PURSUANT TO FRE 408**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Conservation Law Foundation, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Longwood Venues & Destinations, Inc., Wychmere Harbor Real Estate, LLC, Wychmere Shores Condominium Trust, Jeffrey M. Feuerman, Joseph F. McKenney, Barry J. Goldy, Beach Club Management, LLC, Harbor Club Management, LLC, Atlas Investment Group, LLC, and Wychmere Holdings Corp., <br><br> Defendants. | Case No. 1:18-cv-11821-WGY |

**CONSENT DECREE**

## Table of Contents

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 3 |
| II. | DEFINITIONS | 4 |
| III. | COMPLIANCE MEASURES | 7 |
| IV. | MONITORING AND REPORTING | 8 |
| V. | SUPPLEMENTAL ENVIRONMENTAL PROJECT | 9 |
| VI. | LIQUIDATED ATTORNEYS FEES AND COSTS | 11 |
| VII. | EFFECT OF DECREE | 11 |
| VIII. | REVIEW AND TERM OF DECREE | 13 |
| IX. | MODIFICATION AND ENFORCEMENT OF DECREE | 13 |
| X. | PUBLIC STATEMENTS | 14 |
| XI. | MISCELLANEOUS PROVISIONS | 14 |
| XII. | NOTICES | 17 |
| XIII. | EFFECTIVE DATE | 18 |
| XIV. | RETENTION OF JURISDICTION | 18 |
| XV. | FINAL JUDGMENT | 19 |

WHEREAS, Defendant Wychmere Shores Condominium Trust owns and operates a wastewater treatment facility (the "WWTF") on the property at 23 Snow Inn Road, Harwich, Massachusetts containing the Wychmere Beach Club, pursuant to the Individual Groundwater Discharge Permit No. 324-4 issued by the Massachusetts Department of Environmental Protection dated November 19, 2018 (the "MassDEP Permit"), which permits discharges of nitrogen containing effluent that travel through soil to groundwater below and eventually reach Wychmere Harbor;

WHEREAS, Defendant Wychmere Harbor Real Estate, LLC owns 100% of the nonresidential condominium units in the Wychmere Shores Condominium, and has majority control and responsibility for the majority of the costs of the WWTF in the Wychmere Shores Condominium;

WHEREAS,

(1) on August 24, 2018, CLF filed the complaint in Civil Action Case No. 18-cv-11821-WGY (the "Clean Water Act Action") alleging that the discharge of treated effluent containing nitrogen violated the Clean Water Act, and that Defendants were required to obtain an NPDES Permit from the United States Environmental Protection Agency addition to the MassDEP Permit;

(2) on August 2, 2019, CLF filed a separate action, based upon the same facts as the Clean Water Act Action, Civil Action Case No. 19-cv-11672-WGY (the "RCRA Action") alleging violation of the Resource Conservation and Recovery Act;

(3) on November 26, 2019, the district court granted summary judgment and entered judgment in Defendants' favor in the Clean Water Act Action;

(4)   on November 26, 2019, the district court granted in part, and denied in part, Defendants motion to dismiss the RCRA Action;

(5)   on December 20, 2019, CLF filed a notice of appeal of the judgment in the Clean Water Act Action (the "Appeal");

(6)   on April 23, 2020, the United States Supreme Court decided *County of Maui, Hawaii v. Hawaii Wildlife Fund* holding that some discharges to groundwater are covered under the Clean Water Act; and

(7)   the Appeal is still pending

WHEREAS, the Parties disagree regarding the alleged facts and the legal theories asserted in both the Clean Water Act Action and the RCRA Action; and

WHEREAS, without any admission by Defendants of the allegations contained in either the Clean Water Act Action or the RCRA Action, the Parties now desire fully and finally to resolve their differences concerning the claims asserted in the actions.

NOW, THEREFORE, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follow:

## I.   JURISDICTION AND VENUE

1.   Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a)(1) (Clean Water Act jurisdiction).  An actual, justiciable controversy exists between CLF and Defendants.  The requested relief is authorized under 28 U.S.C. §§ 2201-2202 and 33 U.S.C. § 1365.

2.   Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at 23 Snow Inn Road, Harwich, MA, which is located within this judicial district.

## II. DEFINITIONS

1. Unless otherwise provided herein, terms used in this Decree that are defined in the CWA or in regulations promulgated under the CWA shall have the meaning ascribed to them in the CWA or the regulations promulgated thereunder. Whenever the terms listed below are used in this Decree, the following definitions shall apply:

    a. "Appeal" means CLF's appeal of the judgment in the Clean Water Act Action as discussed above.

    b. "Beach Club" means the Wychmere Beach Club.

    c. "Clean Water Act" or "CWA" means the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act), as amended, 33 U.S.C. §§ 1251, *et seq.*, along with its implementing regulations.

    d. "Clean Water Act Action" has the meaning set forth above.

    e. "CLF" means the Conservation Law Foundation, Inc.

    f. "CLF Releasing Parties" means CLF and any and all members, officers, directors, representatives, assigns, agents, consultants, employees, officers, and attorneys thereof, including those who have held positions in the past.

    g. "Complaint" or "Complaints" means the complaints and amended complaints in the Clean Water Act Action and the RCRA Action.

    h. "Defendants" means Wychmere Harbor Real Estate, LLC and Wychmere Shores Condominium Trust. From and after the date of this Decree, Longwood Venues and Destinations, Inc., Jeffrey M. Feuerman, Joseph F.

|  |  |
|---|---|
|  | McKenney, Barry J. Goldy, Beach Club Management, LLC, Harbor Club Management, LLC, Atlas Investment Group, LLC, and Wychmere Holdings Corp. are no longer parties to the Appeal or to the RCRA Action and are not parties to this Decree, as provided herein and in Section VII below. |
| i. | "Discharge Monitoring Report" means the monthly Effluent testing reports that Defendants are required to send to MassDEP under the MassDEP Permit. |
| j. | "Effective Date" means the Date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the Court's docket. |
| k. | "Effluent" means liquid waste flowing out from the WWTF. |
| l. | "Enviro Toilet" means a toilet that by design minimizes the contamination of clean water and discharge of nutrients into the environment. |
| m. | "EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States. |
| n. | "MassDEP" means the Massachusetts Department of Environmental Protection and any successor departments or agencies of the State. |
| o. | "Parties" means CLF and Defendants. |
| p. | "Nitrogen Reduction Program" means programs to reduce nitrogen in Wychmere Harbor in accordance with Section V below. |
| q. | "RCRA Action" has the meaning defined on page 2 of this Decree. |

r.  "Season Opening" means the initial operation of the WWTF after closing for the Winter season.

s.  "Stabilization" means the date in each calendar year on which a sample of treated Effluent from the WWTF is obtained which is determined by laboratory analysis to contain total nitrogen concentrations of less than 10 mg/L.

t.  "Tennis Club" means the portion of the Beach Club housing tennis courts and related locker rooms.

u.  "WWTF" has the meaning provided in the first paragraph of this Decree.

2.  In this Decree, unless the context otherwise requires:

a.  words expressed in the singular number shall include the plural and vice versa; words expressed in the masculine shall include the feminine and neuter gender and vice versa;

b.  references to Articles, Sections, Annexes, Attachments and Exhibits are references to articles, sections, annexes, attachments and exhibits of this Decree;

c.  the descriptive headings of the several Articles and Sections of this Decree are inserted for convenience only, do not constitute a part of this Decree and shall not affect in any way the meaning or interpretation of this Decree;

d.  the words "hereof", "herein", "hereto" and "hereunder", and words of similar import, when used in this Decree, shall refer to this Decree as a whole and not to any provision of this Decree;

6

       e.      "include", "includes", and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of similar import; and

       f.      references to "Dollars", "dollars" or "$" without more are to the lawful currency of the United States of America.

3. In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next business day.

## III. COMPLIANCE MEASURES

1. Until an Amphidrome or alternative upgrades (including a replacement as described below) are installed, Defendants shall, from Season Opening until Stabilization, pump out and truck all Effluent off site instead of discharging Effluent to the leach pits.

2. Unless Defendants opt to replace the WWTF as provided below, Defendants shall install an Amphidrome in the existing WWTF (or a comparable alternative brand of de-nitrifying filtration system which meets or exceeds the performance standards of an Amphidrome, subject to reasonable approval by CLF). If Defendants wish to install an alternative system,

       a.      By December 31, 2023, Defendants shall notify CLF of their desire to install an alternative system and provide sufficient information for CLF to assess the performance of the proposed alternative system;

       b.      By March 30, 2024, CLF shall notify Defendants if it approves installation of the alternative system;

7

      c.      If CLF does not approve the alternative system, Defendants shall install an Amphidrome.

3. Defendants shall install the system on the following schedule:

      a.      By December 31, 2024, Defendants shall have obtained all permits necessary for installation of the Amphidrome (or alterative); and

      b.      By December 31, 2025, Defendants shall install the Amphidrome (or alterative) and begin utilizing it to treat Effluent the next time the WWTF is put into operation.

4. Instead of adding the Amphidrome to the existing WWTF, Defendants may elect to replace the existing WWTF with a new treatment facility. If Defendants elect to replace the WWTF,

      a.      The replacement shall be not be subject to review or approval by CLF.

      b.      Defendants shall at the time consider the feasibility of installing Enviro Toilets at the Beach Club or Tennis Courts and implement the addition if determined to be appropriate by Defendants.

## IV. MONITORING AND REPORTING

1. By January 31 of each year until 2025, inclusive, Defendants shall submit a written progress report to CLF that describes the status of the upgrades set out in Section III above, including an explanation of whether such upgrades have been completed or implemented and any delays in implementation.

2. Wychmere Shores Condominium Trust shall continue to comply with the monitoring and reporting requirements of the MassDEP Permit (or any successor permit).

3. Defendants shall provide CLF with a copy by email of all Discharge Monitoring Reports within fifteen (15) days of their submission to MassDEP until January 30, 2025.

4. If a Discharge Monitoring Report reports a total nitrogen concentration exceeding 10 mg/L, Defendants shall pay a stipulated penalty to CLF of five-thousand dollars ($5,000):

    a. Defendants shall make the payment to CLF within thirty (30) days of submitting the Discharge Monitoring Report to CLF.

    b. This payment shall be in addition to any penalty required by MassDEP.

5. All correspondence, documents, and payments submitted to CLF pursuant to this Article shall be addressed as follows:

> Grace Li
> Conservation Law Foundation
> 62 Summer St.
> Boston, MA 02108
> (617) 850-1773
> paralegal@clf.org

CLF shall provide wire transfer instructions for all payments payable to CLF and shall provide written receipts for all such payments.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECT

1. Defendants shall make annual contributions of seventy-eight thousand dollars ($78,000) to the Association for Preservation of Cape Cod, (or other mutually agreed not-for-profit organization(s)) solely to implement a nitrogen reduction program restricted to and limited to the uses set forth in Section V2 below. Such payments shall me made upon requisition from CLF, on the following schedule:

9

      a.    On or before June 30, 2021, Defendants shall make the first seventy-eight thousand dollar ($78,000) payment;

      b.    On or before December 31, 2021, Defendants shall make the second seventy-eight thousand dollar ($78,000) payment; and

      c.    On or before December 31, 2022, Defendants shall make the third seventy-eight thousand dollar ($78,000) payment.

2.    The nitrogen reduction program and all funds paid to the Association for the Preservation of Cape Cod pursuant to Paragraph 1 above shall be restricted to efforts to reduce nitrogen in and around Wychmere Harbor, limited to the following:

      a.    The creation of new native-plant features;

      b.    Educational programs about nitrogen reduction techniques and benefits for Cape Cod communities;

      c.    Water quality monitoring of Wychmere Harbor; and

      d.    Efforts to promote a comprehensive wastewater management plan.

3.    CLF shall arrange for Association for the Preservation of Cape Cod (or such other mutually agreed not-for-profit organization) to submit to CLF and to Defendants a description of the proposed nitrogen reduction program.

      a.    Within 60 days from receipt of the proposed nitrogen reduction program, Defendants and CLF may provide comments on the proposed program to the Association for the Preservation of Cape Cod.

      b.    Within 60 days of receipt of comments from the Parties, the specifics of the final nitrogen reduction program, as determined by the Association for

    the Preservation of Cape Cod in coordination with CLF, shall be provided to CLF and to Defendants.

   c. Nothing in this sub-paragraph 3 shall impact Defendants' payment obligations under Paragraph V.1, above.

4. Within twelve (12) months of the Effective Date, Defendants shall, in coordination with their consultant Wilkinson Ecological Design, Inc., complete implementation of a nitrogen and fertilization reduction program for landscaping at the Beach Club.

## VI. LIQUIDATED ATTORNEYS FEES AND COSTS

1. Defendants shall pay to CLF a total sum of $135,000 as reimbursement for CLF's attorneys' fees and costs incurred or to be incurred in this matter, including any future attorneys' fees and costs relating to the implementation or monitoring of compliance with this Decree within thirty (30) days of the Effective Date.

2. In the event of litigation to enforce the terms of this agreement, Defendants shall compensate CLF for all costs incurred by CLF, including CLF's reasonable attorneys' fees.

## VII. EFFECT OF DECREE

1. This Consent Decree resolves the civil claims of CLF against the Defendants for violations alleged in the Complaints through the Effective Date of this Decree.

2. The CLF Releasing Parties covenant not to sue and release and discharge all of the defendants originally named in both the RCRA Action and in the Clean Water Act Action, i.e. Longwood Venues & Destinations, Inc., Wychmere Harbor Real Estate, LLC, Wychmere Shores Condominium Trust, Jeffrey M. Feuerman, Joseph F. McKenney, Barry J. Goldy, Beach Club Management, LLC, Harbor

11

Club Management, LLC, Atlas Investment Group, LLC, and Wychmere Holdings Corp., (and each of their respective heirs, successors, assigns, parents, subsidiaries, affiliates, officers, directors, members, employees agents consultants and attorneys) from any and all claims, causes of action, or liability (other than respecting the compliance with this Decree) to the extent such claim, cause of action or liability is related to or arises out of the facts alleged in the Complaints until the expiration of this Decree.

3. Within thirty (30) days of the Effective Date, CLF shall voluntarily dismiss the RCRA Action.

4. The obligations imposed by this Decree shall be carried out by defendants Wychmere Shores Condominium Trust (the owner of the WWTF) and Wychmere Harbor Real Estate, LLC (the owner of all of the real estate and all of the non-residential, commercial condominium units), and they will be solely responsible for any errors or omissions in the performance of those obligations. Wychmere Shores Condominium Trust and Wychmere Harbor Real Estate, LLC shall be solely responsible for the performance of all of the obligations imposed by this Decree, and no other Defendant shall be subject to any actions that may be taken in connection with the enforcement of this Decree.

5. Defendants covenant not to sue and release and discharge the CLF Releasing Parties from any and all claims, causes of action, or liability to the extent such claim, cause of action or liability is related to the facts alleged in the Complaints.

    6.    CLF does not, by its consent to this Decree, warrant or aver in any manner that Defendants' compliance with this Decree will constitute or result in compliance with any federal, state, or local laws, regulations, or permits.

## VIII. REVIEW AND TERM OF DECREE

1. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, upon signing of this Decree by the Parties, CLF shall serve copies of this Decree upon the EPA Administrator and the Attorney General and shall mail a copy of this Decree to the Regional EPA Administrator, as required by 40 C.F.R. § 135.5.

2. Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

3. This Decree shall take effect on the Effective Date and shall terminate upon the following: (1) five (5) years have passed from the Effective Date; and (2) completion of all payment obligations set forth in this Decree.

## IX. MODIFICATION AND ENFORCEMENT OF DECREE

1. This Decree may be modified only upon written consent of the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. The Parties may, by mutual agreement, make non-

material modifications to this Decree and determine whether a proposed modification is a non-material change to the Consent Decree.

2. This Court shall retain jurisdiction over this matter and allow the Clean Water Act Action to be reopened solely for the purpose of enabling the Parties to this Decree to enforce the terms of this Decree.

X. **PUBLIC STATEMENTS**

1. The Parties agree to positively message this Settlement Agreement. A mutually agreeable public statement has been negotiated as a basis for execution of this Settlement Agreement. Any further statement by either party shall be consistent with the mutually agreed-upon public statement.

2. The Parties agree to not disparage one another concerning this Settlement Agreement.

XI. **MISCELLANEOUS PROVISIONS**

1. **Entire Agreement**. This Decree constitutes the entire and exclusive agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

2. **Authorization**. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

3. **Payments**. All payments pursuant to this Decree shall be made by certified bank check, good check, electronic payment or wire transfer or other payment agreed to by the parties.

4. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

5. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

6. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

7. **Counterparts.** Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Decree may be signed in counterparts.

8. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

9. **Force Majeure.** For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of a Party, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree notwithstanding that Party's best efforts to avoid

15

the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided the delayed Party complies with the notice requirements of Section XII (Notices). Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state, or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, a Party's financial difficulty in performing such work, and acts or omissions attributable to a Party's contractors or representatives.

If any event occurs that may delay or prevent the performance of any obligation under this Decree, whether or not caused by a Force Majeure event, the Party incurring the delay shall notify the other Party via email within seven (7) Days after the Party incurring the delay first knew or should have known that the event might cause a delay. Within seven (7) additional Days thereafter, the Party incurring the delay shall submit to the other Party, at the addresses specified in Section XII (Notices), a written explanation of the cause(s) of any actual or expected delay or noncompliance, the anticipated duration of any delay, the measure(s) taken and to be taken to prevent or minimize the delay, and a proposed schedule for the implementation of such measures. Notifications required by this Paragraph shall be provided consistent with the contact information provided Section XII. Nothing in this Decree should be taken to change or amend existing reporting requirements established by MassDEP or EPA.

## XII.   NOTICES

1.  Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and (a) personally served, (b) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (c) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below.  Notices given in the foregoing manner shall be deemed to be given when (a) actually received or refused by the party to whom sent if delivered by courier, or (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for CLF shall be sent to:

Christopher Kilian
Conservation Law Foundation
15 East State St., Suite 4
Montpelier, VT 05602

Ian Coghill
Conservation Law Foundation
62 Summer Street
Boston, MA 02110

Notices for Defendants shall be sent to:

WYCHMERE HARBOR REAL ESTATE, LLC
c/o Wychmere Beach Club
23 Snow Inn Road
Harwich Port, MA  02646

and

       WYCHMERE SHORES CONDOMINIUM TRUST
       c/o Wychmere Beach Club
       23 Snow Inn Road
       Harwich Port, MA  02646

       With a copy to:

       MINTZ
       One Financial Center
       Boston, MA 02111
       Attn:  Jeffrey Porter and Stuart Offner

2. Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this Paragraph.

3. Each Party shall promptly notify the other Party of any claim of any failure to perform any obligation required to performed hereunder, setting forth in reasonable detail the nature of such failure, and the other Party shall have a period of thirty (30) days to cure such alleged default prior to any enforcement of the same by the Court.

## XIII. EFFECTIVE DATE

1. The decree shall become effective on the Effective Date.

## XIV. RETENTION OF JURISDICTION

1. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section IX (Modification and Enforcement), or effectuating or enforcing compliance with the terms of this Decree.  The Court retains exclusive jurisdiction to enforce all matters under this Decree.

## XV. FINAL JUDGMENT

1. Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment of the Court as to CLF and Defendants in the Clean Water Act Action.

CONSERVATION LAW FOUNDATION

By: _[signature]_
Christopher M. Kilian
Title: Vice President

WYCHMERE HARBOR REAL ESTATE, LLC

By: _[signature]_

By: _[signature]_

WYCHMERE SHORES CONDOMINIUM TRUST

By: _[signature]_ Trustee

ENTERED and DATED this 18th day of February 2021

/s/ William G. Young
Honorable William G. Young
United States District Judge

19

96463649v.23